DANIEL SUNDERLAND ET AL., Respondents, *v.* ANN E. HOOD, Appellant.

**January 30, 1883.**

1. WILLS — UNDUE INFLUENCE. — A will cannot be impeached for undue influence unless the influence under which it was made placed some restraint on the exercise of the testator's independent wishes at the time.

2. —— A will produced by influences arising from an unlawful sexual intercourse between the testator and the legatee is not, therefore, void, unless such influences were exerted in restraint of the will of the testator.

3. —— PRACTICE. — An action to contest a will may be brought before the probate court has, in term, confirmed the probate, made in vacation, of the contested will.

4. PRACTICE — AMENDMENTS. — An amendment joining the husband of a plaintiff, in a proceeding to contest a will, being formal, may be made without filing an amended petition.

APPEAL from the St. Louis Circuit Court, LINDLEY, J. *Reversed and remanded.*

CHARLES L. MOSS, for the appellant: The probate court has exclusive original jurisdiction in the probate of wills, and until it has in term passed on a will there exists no right to a contest. — *Banks* v. *Banks*, 65 Mo. 432; *Crea-*

sey v. *Alderson*, 43 Mo. 13; *Smith* v. *Estes*, 72 Mo. 310.
The petition in this cause should have shown final prior
action by the probate court in order to have given the cir-
cuit court jurisdiction. — *Benoist* v. *Murrin*, 48 Mo. 48;
*Dickey* v. *Malechi*, 6 Mo. 177; *Harris* v. *Hays*, 53 Mo. 90.
All in interest should have been made parties. — *Eddie* v.
*Parker*, 31 Mo. 513. In such cases the allegations of the
petition must specifically present issues, and the burden of
proof as to such issues (as when incapacity, undue influence,
want of chastity, etc., are alleged) remains with the party
asserting them. — *Rogers* v. *Frost*, 51 Mo. 470; *Thomas* v.
*Stump*, 62 Mo. 275; *Ketchum* v. *Stearns*, 8 Mo. App. 69.
"The burden of establishing incompetency, or undue
influence, rests on the contestants." — *Harris* v. *Hays*,
53 Mo. 96; *Rankin* v. *Rankin*, 61 Mo. 296. The in-
structions offered by the defendant should have been
given. — *Cravens* v. *Falconer*, 28 Mo. 22; *Odenwalder* v.
*Schoer*, 8 Mo. App. 465; *Brinkman* v. *Rueggusick*, 71 Mo.
553.

KLEIN & FISSE and BROADHEAD & HAEUSSLER, for the
respondent: The action was not prematurely brought. —
*Potter* v. *Adams*, 24 Mo. 159; *Jourden* v. *Meier*, 31 Mo.
40. The first instruction, as to the burden of proof of tes-
tamentary capacity, is sustained by all the authorities. —
*Elliot* v. *Welby*, No. 2430 Mo. App.; *Benoist* v. *Murrin*,
58 Mo. 307, 322; *Evans* v. *Arnold*, 52 Ga. 169. The
second instruction was, under the circumstances of the case,
clearly proper. — *Dean* v. *Negley*, 41 Pa. St. 312, 317.
These circumstances well warranted the court to require the
defendant to sustain the burden of proof, as declared in the
second instruction. — See *Garvin's Administrator* v. *Will-
iams*, 44 Mo. 465; *Wilson* v. *Moran*, 3 Bradf. 172. The third
instruction, defining undue influence, is correct. — *Harvey* v.
*Sullens*, 46 Mo. 147, 151. The fifth instruction properly
defines testamentary capacity and the formal requisites of a
will. — *Harvey* v. *Sullens' Heirs*, 56 Mo. 372; *Benoist* v.

*Murrin*, 58 Mo. 307, 322; *Young* v. *Ridenbaugh*, 67 Mo. 574, 587; *Muller* v. *St. Louis Hospital Assn.*, 5 Mo. App. 390.

Bakewell, J., delivered the opinion of the court.

This was an action by the nephews and nieces, who were also the nearest surviving relatives, of Julius P. Sunderland, to contest the validity of an instrument which had been admitted to probate during the vacation of the probate court, as his last will. The alleged will bequeaths a gold watch and chain to one of the testator's nieces, leaves all the remainder of the property to defendant, and appoints her executrix, and directs that she give no bond. The jury found against the will.

The testimony shows that the testator was a man about sixty years old at the time of his death. He was a man of strong will, and not easily influenced. Some weeks before he died, he was taken sick with a disease of the bladder. He stated to the attending physician that he desired to leave all his property to the defendant, and wished to know whether he was in danger, in order to make his will. On the day before he died, as his case was desperate, an operation was performed to relieve the bladder and diminish his sufferings. He then desired to have an attorney brought. The attorney came on the day of his death. The testator's mind was then lucid. He stated to the attorney that he had given to his nephews and nieces all that he intended to give them, that he disliked them, that they had annoyed him by officious attentions; and he sent for a paper which he had drawn some months before, while in health, and in which he had left all his property to defendant. This instrument was in the form of a will, but was not signed. The testator then said that he believed he would leave his wife's watch to his niece Lilly. The attorney wrote the will according to these instructions, and returned with it, and it was duly executed. The dying man was too weak

to write his name, and made his mark.    The will was slowly
and carefully read to him before he signed it, and he under-
stood it.

The wife of the testator died about a year before him, at
Delhi, Illinois.    They had no children.    They were not
separated; but he did business and lived in St. Louis, and
she at Delhi, where he visited her, going there every Satur-
day night.    For some years before his death, and up to that
time, the testator boarded with defendant in St. Louis.
The only inmates of the house were the deceased, the de-
fendant, her daughter, and a colored servant girl.    He
manifested some desire to keep the fact of his living at
defendant's house a secret; though he told it to some of
his friends.    At the time of his sickness his sleeping-room
was within hers, and could only be reached through hers;
her sewing machine was in his room.    Many years before
testator's death defendant had lived in the same house with
him and his wife, and had been the cause of trouble between
them.    While Sunderland was sick, his relatives and friends
had free access to him, and went freely to see him.    There
is testimony that he expressed regard for his relatives, and
was kind and affectionate to them, and that he treated his
niece Lilly as an adopted daughter; and there is testimony
that he had no regard or affection for them, and before his
death said that they cared, not for him, but for his money.
Sunderland's partner, a witness for plaintiffs, testifies that
Sunderland once told him that "there would be some fun
among his relatives when he died."  . This witness said he
once tried to persuade Sunderland to leave some furniture
he had to his niece Lilly, but he said he would not do so.

It does not appear that there was any influence exerted,
in any way, by defendant to procure the making of the
alleged will.    There is no evidence that she attempted to
conceal the fact of his making a will.    The attorney who
drew the instrument did not know her.    She told the part-
ner of the deceased, on the day of his death, what will he

intended to make, and asked him to come at five o'clock to witness it. But the will was signed at three o'clock, before the partner got there, and witnessed by the doctor and the attorney. There can be no doubt from the testimony that the deceased knew what he was doing when he made the will, and that he made it in accordance with an intention expressed when in health. The only changes made from the paper originally written for his will, and kept by him and not executed, were the legacy of the watch and the provision as to the defendant's not being required to give a bond. It appears that, when the first paper was drawn, Sunderland did not know that such a provision would be effectual.

Very many witnesses were examined; the evidence is voluminous; it has been examined with care, and I believe the above statement is a fair one, though many details are omitted to avoid prolixity. There can be no question that, had the woman in whose favor the will was made been one as to whom there existed no suspicion of sexual intercourse with the testator, the will must have been sustained upon the evidence, and that, if this element is left out, there is nothing in the case to warrant the submission to the jury of any question of undue influence in procuring the execution of the will. The right exists to pass over relatives, even the nearest, for a perfect stranger, in the testamentary disposition of property. And the question as to a will is not, whether it is such a disposition of property as meets the approval of a jury, but whether it is the will of the testator, not affected by fraudulent representations or unlawful influence unduly exercised over the very act of devising.

There is no direct evidence that the defendant exerted any influence over Sunderland at the time of making his will, unless we are to hold that, if a man knowingly and wrongfully lives in a state of concubinage or adultery, and the woman, by the influence of such cohabitation, procures a will from her paramour, cutting off his relatives, the will

must be held void for illegal influences. But we do not think this is the law. If the will was the free choice and judgment of a person in possession of the necessary facts, not deceived or tricked in any way, and really free at the time he made the will, we do not think that the law will consider the morality of his motives. Every will is produced by some influence. It is enough, as to this, that free choice and judgment are not interfered with. The law does not prohibit a man from making a will in favor of a woman with whom he has maintained, and'maintains at the time of making a will, an illicit intercourse.

It is true that there is support for the view that the influence of an adultress over her paramour will, in itself, avoid his will in her favor, in what is said in *Dean* v. *Negley* (41 Pa. St. 312). But what was really determined in that case is, that proof of making a will under such unlawful relations is evidence of undue influence which it is error to exclude from a jury. The court expressly refuses to say that such relations raise a presumption of law of undue influence, though that seems to be the opinion of the learned judge who wrote the opinion. The question is left as one of fact; and, in the subsequent case of *Eckert* v. *Floury* (43 Pa. St. 46), the same court holds that undue influence to avoid a will must be such as to destroy the free agency of the testator at the time the instrument was made — that it, must be a present constraint operating on the mind of the testator at the time of making the will.

The question was very carefully examined, in view of the decision in *Dean* v. *Negley* (*supra*), in Ohio. *Munroe* v. *Barclay*, 17 Ohio St. 302. It was held in that case, that a will produced by influences springing from an unlawful sexual commerce between the testator and legatee, is not, for that reason, void, unless such influences were exerted in restraint of the will of the testator; that, to invalidate a will for fraud and undue influence it must appear that the fraud or influence complained of had some effect upon the

testator in producing the very act of making his will; and that a will cannot be impeached for undue influence, unless the influence under which it was made imposes some restraint upon the testator in the disposition of his property in accordance with his own independent wishes and judgment.

The law will not uphold a will that has been procured by fraud upon the testator, or by any other influence that destroys the free exercise of his will. But the character of the motives that induce the testamentary disposition have nothing to do with the free exercise of his inclination and judgment. A will which is the testator's will, and not the will of another, cannot be interfered with because its provisions are not wise.

To make out a charge of undue influence it must be shown that an influence was exercised over the mind of the testator which was really a moral coercion, and which constrained him to do that which he did not wish to do, but which, from fear, desire of peace, or some feeling other than affection, he was unable to resist. *Hall* v. *Hall*, 38 Ala. 131.

Where a will is impeached for undue influence exercised over a weak intellect by one holding close and confidential relations to the testator, it is held that it is not sufficient to show that the testator was not under restraint at the very moment of making the will, where a habit of overmastering control is shown which would be likely to exert its influence when the person exercising it was not actually present. *Taylor* v. *Wilburn*, 20 Mo. 306. But the constraint that is to avoid a will must be operative on the mind of the testator at the time the will was made. *Tingley* v. *Cowgill*, 48 Mo. 290.

The mere fact that the will is made in favor of a person for whom the testator entertains an inordinate affection, and with whom he sustains immoral relations, taken by itself is not, we think, fatal to it. But if there may be un-

due influence from a wife which will avoid a will, — and it is so held, — much more may there be undue influence from one with whom the like intimate relations are unlawfully maintained. In either case, it is only the influence which is unduly exerted over the very act of devising, so as to prevent the will from being truly the testator's act, which will be fatal to the will. But the mere fact of unlawful cohabitation does not, of itself, establish undue influence, though it may be one fact to go to the jury as tending to show it.

In the case at bar, there was evidence from which a jury might infer that Mrs. Hood and Sunderland were, for many years, and up to the time of his death, maintaining unlawful relations with each other. But the jury were not bound to find so. There were many witnesses who swore to the good character of Mrs. Hood. And it seems that many persons who knew her well, had no suspicion that there was anything wrong in the relations between herself and the deceased.

Amongst other instructions given for the plaintiff was the following : —

" The court instructs the jury that undue influence, as used in these instructions, means any influence of any improper kind which they may believe from the facts and circumstances in evidence so operated upon the weakened or failing faculties of the deceased, Julius P. Sunderland, as to cause him to make a different disposition of his property than he would have made or directed if free from such influence ; and, that it makes no difference from what source such undue influence may have proceeded, if the exertion thereof upon him existed down to, and at the time of, the execution of the paper in question, then the jury will find said paper is not his will.".

This instruction is too indefinite, and is liable to be understood, and probably was understood by the jury, in a sense that we consider erroneous. The influence arising from an unlawful sexual relation is certainly an improper influence,

but it appears from what has been said that we believe the law to be, that, unless it is unduly exerted, and impairs the freedom of the testator's will, it is not such as will invalidate a will.

We do not think it necessary to set out or comment upon the other instructions.

2. There is nothing in the contention of appellant that this suit was prematurely brought, by reason of having been begun before the probate court in term had confirmed the probate of the contested will. *Potter* v. *Adams*, 24 Mo. 159.

3. There is some testimony in the case tending to show that some of the female plaintiffs are married women. If the fact be so, though their husbands may not be parties in interest, yet, under the practice act, they should be made co-plaintiffs. This formal amendment may be made, if necessary, without the filing of a new petition. We notice this, as it appears that the case was tried on a second amended petition.

For the reason stated the judgment will be reversed and the cause remanded. All the judges concur.